# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VOTERLABS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 19-524-RGA |
| | ) |
| ETHOS GROUP CONSULTING SERVICES, LLC, | ) ORAL ARGUMENT REQUESTED |
| | ) |
| | ) PUBLIC VERSION OF D.I. 23 |
| | ) |
| Defendant. | ) FILED NOVEMBER 6, 2019 |

**DEFENDANT'S OBJECTIONS TO MAGISTRATE JUDGE SHERRY R. FALLON'S REPORT AND RECOMMENDATION DATED FEBRUARY 14, 2018 REGARDING DEFENDANT'S MOTION FOR REMAND**

OF COUNSEL:

Bryan J. Wick (pro hac vice pending)
J. Sean Lemoine (pro hac vice pending)
WICK PHILLIPS GOULD & MARTIN, LLP
3131 McKinney Avenue, Suite 100
Dallas, Texas 75204
(214) 692-6200
sean.lemoine@wickphillips.com
bryan.wick@wickphillips.com

Dated:  October 30, 2019

A. Thompson Bayliss (#4379)
Adam K. Schulman (#5700)
ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, Delaware 19807
(302) 778-1000
bayliss@abramsbayliss.com
schulman@abramsbayliss.com

*Attorneys for Defendant Ethos Group Consulting Services, LLC*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ........................................................................................................... ii

I.     INTRODUCTION ..........................................................................................................1

II.    STATEMENT OF RELEVANT FACTS ......................................................................3

III.   OBJECTIONS.................................................................................................................4

A.  THE R&R ERRED BY NOT INTERPRETING THE ENTIRETY OF SECTION 4(A). ......................................................................................................6

B.  THE R&R ERRED BY CONFLATING THE BASE ROYALTY WITH PARTIAL BASE ROYALTY. .................................................................................7

C.  THE R&R ERRED BY ACCEPTING THE ASSERTION THAT AN AMBIGUITY EXISTS IN § 4(A) WITHOUT FIRST DETERMINING THE EXISTENCE OF TWO COMPETING REASONABLE INTERPRETATIONS.        8

D.  THE R&R ERRED BECAUSE § 4(A) CONTAINS A CONDITION PRECEDENT THAT VOTERLABS HAS NOT SATISFIED. ........................................9

IV.   CONCLUSION............................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AJZN, Inc. v. Yu*,
  C.A. No. 13-149 GMS, 2015 WL 331937 (D. Del. Jan. 26, 2015) ...........................................9

*The Ark Group, Inc. v. Shield Restraint Sys., Inc.*,
  C.A. No. 18-755-RGA, 2018 WL 4926449 (D. Del. Oct. 10, 2018) ............................2, 7, 8, 9

*Cabela's LLC v. Highby*,
  C.A. No. 18- 1223-RGA, 2018 WL 6168179 (D. Del. Nov. 26, 2018) ....................................9

*Chase Manhattan Bank v. Iridium Africa Corp.*,
  307 F. Supp. 2d 608 (D. Del. 2004) ........................................................................................3

*Citisteel USA, Inc. v. Gen. Elec. Co.*,
  78 Fed. Appx. 832 (3d Cir. 2003) ........................................................................................6, 7

*In re Energy Future Holdings Corp.*,
  585 B.R. 341 (D. Del. 2018), aff'd, 773 Fed. Appx. 89 (3d Cir. 2019) ...................................9

*Hirani Eng'g & Land Surveying, P.C. v. Mehar Inv. Group, LLC*,
  C.A. No. 09-252-RGA, 2012 WL 2914932 (D. Del. July 17, 2012) .......................................9

*Kolber v. Body Cent. Corp.*,
  C.A. No. 11-731-RGA, 2012 WL 3095324 (D. Del. July 30, 2012) .......................................2

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc .*,
  998 F.2d 1192 (3d Cir.1993) ...................................................................................................2

*Rhone-Poulenc Basic Chemicals Co. v. Am. Motorists Ins. Co.*,
  616 A.2d 1192 (Del. 1992) ......................................................................................................9

*TQ Delta, LLC v. ADTRAN, Inc.*,
  C.A. No. 14-954-RGA, 2019 WL 3304705 (D. Del. July 23, 2019) .......................................6

*Uni-Marts, LLC v. NRC Realty Advisors, LLC*,
  426 B.R. 77 (D. Del. 2010) ......................................................................................................2

*Universal Am. Corp. v. Partners Healthcare Sols. Holdings, L.P.*,
  176 F. Supp. 3d 387 (D. Del. 2016) (Andrews, J) ...................................................................9

*Westway Holdings Corp. v. Tate & Lyle PLC*,
  2009 WL 1370940 (D. Del. May 13, 2009) ..........................................................................10

**Other Authorities**

Fed. R. Civ. P. 72(a), (b)(2) ........................................................................................................1

Rule 12(b)(6)..................................................................................................................................2

Rule 12(c)..................................................................................................................................6, 10

## I. INTRODUCTION

Defendant respectfully objects to Magistrate Judge Fallon's October 16, 2019 Report and Recommendation ("R&R") (D.I. 22) recommending that Defendant's motion to dismiss "Count II Breach of Contract Termination Payment" be denied.  R&R 11-13; Fed. R. Civ. P. 72(a), (b)(2).[1]

Count II alleges that after Ethos terminated the Agreement and SOW it failed to pay VoterLabs a Base Royalty during the Base Royalty Term (a period that lasts ninety-nine years) pursuant to VoterLabs' interpretation of Section 4(a) of the SOW ("§ 4(a)").  Complaint, ¶¶ 48-50.  Ethos challenged the viability of Count II because the complete definition of Base Royalty contains a condition precedent – VoterLab's completion of  software (three Feature Groups) that would increase the sales of Ethos' products.  Complaint, ¶¶ 22-24, 38, 48-52; D.I. 11 at 11-13.  In relevant part, § 4(a) states:

> (a) Royalties.  **Upon the completion of all three Feature Groups**, **Service Provider shall be entitled to a royalty of** (a) one dollar ($1. 00) per each Vehicle sold by or through a Monthly User ("**Monthly Royalty**") **or** (b) two hundred and fifty thousand dollars ($250,000) per year ("**Yearly Minimum Royalty**"), **whichever is greater (collectively "Base Royalty"**). . . . **The Base Royalty shall last for a period of ninety-nine (99) years from the SOW effective date ("Base Royalty Term")**, after the ninety-nine (99) years Customer shall have the right to use the Feature Groups without payment of Base Royalty.  . . . Except as mutually agreed upon by the parties, **upon termination** of the Agreement or this SOW **for any reason**, **Customer shall pay to Service Provider, during the Base Royalty Term, 1 % of the Base Royalt**y for each full month that has elapsed between the SOW Effective Date and the date of termination.  (emphasis added).

---

[1] Capitalized terms have the same meaning as in the R&R or the Opening Brief in Support of Defendant Ethos Group Consulting Services, LLC's Motion to Dismiss Plaintiff VoterLabs, Inc.'s Compliant (D.I. 11).  Ethos Group does not challenge the R&R's recommendation that this Court deny dismissal of Count I and grant dismissal of Count III.

Even at the motion to dismiss stage, the trial court does not accept assertions of ambiguity and instead examines the four corners of the contract to determine if two reasonable interpretations exist. *See The Ark Group, Inc. v. Shield Restraint Sys., Inc.*, C.A. No. 18-755-RGA, 2018 WL 4926449, at *1–2 (D. Del. Oct. 10, 2018) (granting Rule 12(b)(6) dismissal and rejecting plaintiff's attempt to create an ambiguity). The question of law before the Court is whether an ambiguity exists within § 4(a) such that VoterLabs can plausibly allege a breach of contract claim against Ethos for its failure to pay the Base Royalty when none of the three Feature Groups were completed. D.I. 11 at 11-13.

VoterLab's Complaint did not attach the SOW, only cited to portions of § 4(a), and purposefully did not include § 4(a)'s "[u]pon completion of the three Feature Groups" condition precedent language. *Compare* Complaint, ¶¶ 49-50, 55 *with* D.I. 11, Ex. B. § 4(a). The R&R cited to the language from the Complaint and found that it could not determine factual disputes as to any ambiguity at the motion to dismiss stage. R&R 12-13. However, an examination of the entirety of the Agreement and SOW is appropriate at the motion to dismiss stage. *See Kolber v. Body Cent. Corp.*, C.A. No. 11-731-RGA, 2012 WL 3095324, at *2 (D. Del. July 30, 2012); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc .*, 998 F.2d 1192, 1196 (3d Cir.1993);[2] *Uni-Marts, LLC v. NRC Realty Advisors, LLC*, 426 B.R. 77, 82 (D. Del. 2010). The R&R erred by not evaluating the complete language of § 4(a).

Examining the entirety of § 4(a) comports with settled principles of contract interpretation which require the trial court to determine if two reasonable interpretations exist that justify an

---

[2] Agreement and SOW were attached to D.I. 11 as Exhibits A and B respectively. VoterLabs did not object to the authenticity of the Agreement and SOW, and references sections in the Opposition (D.I. 14), not contained in the Complaint. D.I. 14 at 13-14. The R&R also notes that the "Agreement and SOW were incorporated by reference in the Complaint." R&R 5n. 4.

ambiguity. *See Chase Manhattan Bank v. Iridium Africa Corp.*, 307 F. Supp. 2d 608, 613 (D. Del. 2004) ("Accordingly, the Court concludes that Section 4.02 of the LLC Agreement is not 'reasonably susceptible' to different interpretations on the issue of the Defendants' waiver of their defenses, and therefore, will not adopt the Magistrate Judge's Report and Recommendation on this issue."). Because Ethos advances the only reasonable interpretation of § 4(a) (that Feature Groups are a condition precedent to the creation and payment of a Base Royalty), VoterLab's lack of a competing reasonable interpretation is fatal to Count II. Therefore, the Court should sustain these objections to the R&R and dismiss Count II.

## II.     STATEMENT OF RELEVANT FACTS

Ethos and VoterLabs executed the Agreement and SOW in 2017, for the purpose of developing software that would include three (3) Feature Groups identified as (i) Terra In-Store Employee Application Suite, (ii) In-Market Intelligence Platform, and (iii) Exo Integrated Web Content Properties Brands Content Management System. *See* Complaint, ¶¶ 22-23; Agreement, §1; SOW, §1. The Agreement and SOW are fully integrated and interrelated, were fully executed on December 18, 2017 with effective dates of October 23, 2017, and are governed by Delaware law. D.I. 11, Ex. A at §§1 and 21; Ex. B at p. 1.

VoterLabs estimated it would take six hundred-thirty (630) days to complete the project. Complaint, ¶¶ 23-24; D.I. 11, Ex. B. § 4(d).[3]  § 4(d) of the SOW states that "[i]n consideration of development of the Feature Groups, [Ethos] will make payments (the "Engagement Payments")" to VoterLabs. Complaint, ¶ 43, D.I., Ex. B § 4(d).

---

[3] The first payment was received on June 12, 2017. Therefore this date calculation is based on a start date of June 12, 2017, not the effective date of the Agreements (October 23, 2017).

Ethos terminated the project on May 21, 2018, with termination effective sixty (60) days later on July 20, 2018.  Complaint, ¶¶ 97-98.  Including the sixty (60) day run-off, VoterLabs worked on the project for four hundred-four (404) days.  VoterLabs does not plead that it completed any of the three Feature Groups, and instead confirms that none were completed.  Complaint, ¶¶ 86, 98-99, 111.

Ethos paid four (4) of the eight (8) Engagement Payments and did not make any Base Royalty payment because VoterLabs failed to complete the project. Complaint, ¶¶ 114, 121-22.  While VoterLabs has not defined the amount of the termination payment, utilizing eight months of work (October 23, 2017 to July 20, 2018), it approximates to around $2,000,000.  D.I. 11 at 11 n.7; R&R 13 n.13.

§ 4(a) provides for the possibility of a payment defined as the Base Royalty.  *See* D.I. 11 at Ex. B., § 4(a).  While the Complaint only cites piecemeal to § 4(a), the R&R includes almost the entire paragraph.  *Compare* Complaint, ¶¶ 49-50, 55 *with* R&R 4-5.  Under Ethos' interpretation, § 4(a) requires completion of all three Feature Groups in order to create a Base Royalty calculation.  D.I. 11, Ex. B. § 4(a).  Absent a Base Royalty, there is nothing upon which to make a termination payment.  *See id.* Under VoterLabs' interpretation, the completion of the Feature Groups is irrelevant, and instead it is entitled to payments covering a ninety-nine (99) year period based on 1% of a $250,000/year minimum. Complaint, ¶ 56.

### III.   OBJECTIONS

Ethos' interpretation that the Base Royalty is only owed "[u]pon *completion* of all three Feature Groups" is straightforward, satisfies the objective theory of contracts, and gives meaning to the predicate phrase.  Absent completion of the three Feature Groups no duty to pay a Base Royalty exists. Completion is the condition precedent which creates Ethos' obligation to pay the defined term of Base Royalty (the greater of the Monthly Royalty or Yearly Minimum Royalty).

From an objective viewer's perspective, if VoterLabs failed to complete the Feature Groups there is nothing upon which to pay a Base Royalty. Conversely, Ethos' interpretation gives meaning to the termination clause if VoterLabs completed the Feature Groups and is subsequently terminated.

In contrast, VoterLab's interpretation completely eliminates the condition precedent of "[u]pon completion" and would allow VoterLab to terminate the SOW and obtain a ninety-nine year payment even though it failed to complete the three software components. The termination clause uses "for any reason" (as opposed to "without cause") which, only under VoterLabs' interpretation, creates a windfall for its own failure to complete the software project. VoterLab's interpretation also changes Base Royalty from a defined term with two (2) possible calculations to a single calculation, i.e. the Yearly Minimum Royalty.

The Complaint created confusion (and the appearance of ambiguity) by failing to include the entirety of § 4(a), which created an error within the R&R. First, while the R&R accepts and cites to almost the entirety of § 4(a), its contract analysis is based on VoterLab's piecemeal pleadings, as opposed to the complete language of § 4(a). R&R 5, 12-13. Second, the R&R accepted VoterLab's assertion that because § 4(a) allows a partial royalty prior to completion of the Feature Groups (which is not a breach upon which VoterLabs sues), Ethos' challenge is an impermissible attack on well pleaded facts. R&R 12. However, this is a misinterpretation of § 4(a), again caused by VoterLab's lack of inclusion of the entirety of § 4(a). Third, because the R&R did not examine the entirety of § 4(a), it incorrectly accepted VoterLab's assertion that an ambiguity existed, as opposed to determining whether two (2) reasonable, competing interpretations exist that create an ambiguity. R&R 12. Fourth, because of the foregoing errors, the R&R did not address whether a condition precedent exists that VoterLabs must satisfy to

plausibly plead Count II. Because only Ethos' interpretation of § 4(a) is reasonable the Court should sustain these objections and dismiss Count II.

### A. THE R&R ERRED BY NOT INTERPRETING THE ENTIRETY OF SECTION 4(A).

Ethos attached the Agreement and SOW in accordance with well settled Third Circuit Precedent. *See Citisteel USA, Inc. v. Gen. Elec. Co.*, 78 Fed. Appx. 832, 836, 837 (3d Cir. 2003) (upholding dismissal under Rule 12(c) by evaluating unchallenged contract and rejecting assertion of ambiguity). Instead of determining the legal import of § 4 (a)'s "upon completion of the three Feature Groups" language in relation to Base Royalty, the R&R accepted the Complaint's shortened definition of "Base Royalty."[4] R&R 12-13. The following interlineation visualizes the error the Complaint created when the R&R accepted VoterLab's curtailed definitions:

> ~~Upon the completion of all three Feature Groups,~~ Service Provider shall be entitled to a royalty of (a) one dollar ($1. 00) per each Vehicle sold by or through a Monthly User ("Monthly Royalty") or (b) two hundred and fifty thousand dollars ($250,000) per year ("Yearly Minimum Royalty"), whichever is greater (collectively "Base Royalty").

As a "principle of contract interpretation . . . courts 'should avoid interpreting contractual language in such a way as to render any term of the contract meaningless or superfluous.'" *See TQ Delta, LLC v. ADTRAN, Inc.*, C.A. No. 14-954-RGA, 2019 WL 3304705, at *5 (D. Del. July 23, 2019).

Further, because VoterLabs never completed the project its interpretation conveniently self-selects the Yearly Minimum Royalty to establish its damage model of $1,960,000.[5] R&R 13 n.13. The practical effect is to further eliminate additional § 4(a) language as follows:

---

[4] *See* Complaint, ¶ 49 ("Base Royalty' is defined as: "a royalty of (a) one dollar ($1.00) per Vehicle sold by or through a Monthly User ("Monthly Royalty") or (b) two hundred and fifty thousand dollars ($250,000) per year ("Yearly Minimum Royalty"), whichever is greater".).

[5] *See* Complaint, ¶ 56 ("The words used by the parties literally say (paraphrasing for simplicity) that upon termination for any reason, Ethos Group shall pay VoterLabs, during a 99 year period starting October 23, 2017, 1% of $250,000/year minimum or $1/vehicle paid monthly, whichever is greater, for each full month that elapses between October 23, 2017 and the date of termination.")

> ~~Upon the completion of all three Feature Groups,~~ Service Provider shall be entitled to a royalty of ~~(a) one dollar ($1.00) per each Vehicle sold by or through a Monthly User ("Monthly Royalty") or (b)~~ two hundred and fifty thousand dollars ($250,000) per year ~~("Yearly Minimum Royalty"), whichever is greater (collectively~~ "Base Royalty").

Having embarked upon an analysis of the entirety of the Agreement and SOW, the R&R committed legal error in accepting the Complaint's recitation of § 4(a)'s terms as opposed to the actual negotiated terms. *See Citisteel USA*, 78 Fed. Appx. at 836-37; *The Ark Group,* 2018 WL 4926449, at *1–2. The Court should sustain this objection.

### B. THE R&R ERRED BY CONFLATING THE BASE ROYALTY WITH PARTIAL BASE ROYALTY.

In response to Ethos' focus on the "[u]pon completion" predicate to the creation of Base Royalty, VoterLabs took the following language from § 4(a) out of context to manufacture an ambiguity. D.I. 14 at 16.

> **During development and prior to completion of all three Feature Groups, the Base Royalty may**, at the sole discretion of the Customer, **be separated into multiple parts for each Feature Group-for example, thirty percent (30%) of the Base Royalty may be earned and payable upon the completion of Feature Group** Terra In-Store Employee Application Suite. On an annual basis, the parties **shall assess the extent to which Feature Group components have been completed**, expressed as a percentage, and upon Customer's sole discretion, such percentage of the Base Royalty may be payable to Service Provider thereafter. **Any agreed-upon portion of the Base Royalty shall be referred to herein as a "Partial Base Royalty"** and, **notwithstanding the first clause of this Section 4(a)**, **shall be payable upon the completion of the Feature Group** or portion thereof to which such Partial Base Royalty pertains. (emphasis added)[6]

Relying on only a small section of this language, the R&R cabined Base Royalty into Partial Base Royalty to determine that Ethos improperly raised unresolvable factual disputes. R&R 12.

---

[6] The Partial Base Royalty clause is sandwiched between the Base Royalty definition and the termination language, but the placement of the clause does not change the definition of Base Royalty. *See The Ark Group,* 2018 WL 4926449, at *1–2.

{A&B-00632489}  7

First, Ethos could not raise a factual dispute as to the interrelation between Base Royalty and Partial Base Royalty because the Complaint does not cite the Partial Base Royalty clause, plead any facts related thereto, and VoterLab is not suing for the Partial Base Royalty. Complaint, ¶ 128.[7]  Second, the Partial Base Royalty clause makes no mention of termination, nor does the termination clause mention Partial Base Royalty. There is no reading of § 4(a) that VoterLabs gets paid a Partial Base Royalty upon termination (absent a subsequent agreement between the parties).[8] Third, under traditional contract interpretation principles, including using the defined terms established by the parties, giving effect to all terms, and reconciling the various provisions when possible, the R&R erred when conflating two separate definitions in § 4(a): (1) Base Royalty (completion of all three Feature Groups); (2) Partial Base Royalty (completion of one Feature Group or portion thereof) to create a factual dispute. *See The Ark Group,* 2018 WL 4926449, at *1–2. Because no ambiguity exists when examining the two separate definitions, the R&R erred in its legal interpretation. The Court should sustain this objection.

    **C.   THE R&R ERRED BY ACCEPTING THE ASSERTION THAT AN AMBIGUITY EXISTS IN § 4(A) WITHOUT FIRST DETERMINING THE EXISTENCE OF TWO COMPETING REASONABLE INTERPRETATIONS.**

The R&R erred when it determined it could not decide factual disputes concerning the interpretation of the termination clause, accepting VoterLabs' allegation that § 4(a)'s meaning is not immediately apparent and may require examination of parole evidence (including application of the forthright negotiator principle). R&R 12. This is contrary to Delaware law as an ambiguity only exists "when the provisions in controversy are reasonably or fairly susceptible of different

---

[7] Had VoterLabs attempted to assert a claim for Partial Base Royalty, it would still require a factual pleading of completion of a Feature Group or some portion thereof.

[8] If VoterLabs and Ethos had contracted for a termination payment on a Partial Base Royalty then the termination clause would (but does not) include the defined term of Partial Base Royalty.

interpretations or may have two or more different meanings." *Rhone-Poulenc Basic Chemicals Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992). Further, "[t]he interpretation of a contract is a matter of law." *Hirani Eng'g & Land Surveying, P.C. v. Mehar Inv. Group, LLC*, C.A. No. 09-252-RGA, 2012 WL 2914932, at *2 (D. Del. July 17, 2012). On numerous occasions this Court has applied these principles in rejecting attempts to create an ambiguity. *The Ark Group, Inc.*, 2018 WL 4926449, at *1–2 (rejecting plaintiff's attempt to create an ambiguity); *Universal Am. Corp. v. Partners Healthcare Sols. Holdings, L.P.*, 176 F. Supp. 3d 387, 402 (D. Del. 2016) (Andrews, J) (rejecting attempt to create an ambiguity); *Cabela's LLC v. Highby*, C.A. No. 18-1223-RGA, 2018 WL 6168179, at *3–4 (D. Del. Nov. 26, 2018) (rejecting attempt to create an ambiguity). The R&R erred by failing to examine and articulate two reasonable interpretations of § 4(a)'s use of Base Royalty and the interrelation to the termination provision.[9] The Court should sustain this objection.

### D. THE R&R ERRED BECAUSE § 4(A) CONTAINS A CONDITION PRECEDENT THAT VOTERLABS HAS NOT SATISFIED.

As described above, the plain language of "[u]pon completion of the Three Feature Groups" is the condition precedent which, when satisfied, creates an obligation to pay the Base Royalty under § 4(a). Applying that definition to the termination clause, the Base Royalty is only owed upon completion. Applying the objective theory of contracts, Ethos' interpretation gives meaning to the "[u]pon completion" language which is a condition precedent and maintains the integrity of the definition of Base Royalty. *See AJZN, Inc.*, 2015 WL 331937, at *7; *In re Energy Future Holdings Corp.*, 585 B.R. 341, 347–49 (D. Del. 2018), aff'd, 773 Fed. Appx. 89 (3d Cir.

---

[9] The Complaint does not assert an ambiguity exists, but obliquely discusses the forthright negotiator principle. *See generally* Complaint; s*ee also AJZN, Inc. v. Yu*, C.A. No. 13-149 GMS, 2015 WL 331937, at *8 (D. Del. Jan. 26, 2015) ("AJZN does not raise any ambiguity argument and the court should not try to find one.").

2019) (affirming Rule 12(c) dismissal under New York law and interpreting contract preamable language as condition precedent). In similar circumstances, completion and sale of a product is condition precedent to trigger a royalty payment. *See Westway Holdings Corp. v. Tate & Lyle PLC*, 2009 WL 1370940, at *6, n.5 (D. Del. May 13, 2009) citing *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1444 (7th Cir.1992).'"). Ethos' interpretation also protects VoterLabs in the event of a termination after the condition precedent is satisfied, while avoiding a windfall if it is not satisfied.

Because the parties negotiated and used the defined term of Base Royalty, the Court should apply that definition to the termination clause. VoterLabs' interpretation eliminates the "[u]pon completion" predicate, removes the calculation that goes into Base Royalty in the termination clause, and creates a windfall for VoterLabs if it quits/fails/or is terminated without completing the three Feature Groups. *See infra* §§ II and III. Absent two reasonable competing interpretations, no ambiguity exists and VoterLabs has not plead satisfaction of the § 4(a) condition precedent. Dismissal of Count II is appropriate.

## IV.   CONCLUSION

For the above reasons, Ethos respectfully requests that the Court sustain these objections and dismiss Count II of VoterLabs' Complaint with prejudice.

| | |
|---|---|
| OF COUNSEL:<br><br>Bryan J. Wick (pro hac vice pending)<br>J. Sean Lemoine (pro hac vice pending)<br>WICK PHILLIPS GOULD & MARTIN, LLP<br>3131 McKinney Avenue, Suite 100<br>Dallas, Texas 75204<br>(214) 692-6200<br>sean.lemoine@wickphillips.com<br>bryan.wick@wickphillips.com<br><br>Dated:  October 30, 2019 | */s/  A. Thompson Bayliss*<br>A. Thompson Bayliss (#4379)<br>Adam K. Schulman (#5700)<br>ABRAMS & BAYLISS LLP<br>20 Montchanin Road, Suite 200<br>Wilmington, Delaware 19807<br>(302) 778-1000<br>bayliss@abramsbayliss.com<br>schulman@abramsbayliss.com<br><br>*Attorneys for Defendant Ethos Group Consulting Services, LLC* |