**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **VOTERLABS, INC.** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  19-524-MAK** |
| | : | **(Consolidated)** |
| **ETHOS GROUP CONSULTING** | : | |
| **SERVICES, LLC, *et al.*** | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                            **September 21, 2021**

A Connecticut software company agreeing to produce software for a Delaware entity under a written contract did not obtain guarantees or other assurances of payment from persons or entities related to the Delaware entity. The Delaware entity allegedly defaulted on payment.  The software developer sued for the owed payments.  After over two years of litigation, the software developer now twice moved to bring claims against Texas citizens sharing the same office space with admitted business relationships with the Delaware contracting entity. We denied the software developer's first attempt to add these Texans last month without prejudice to plead a basis for our exercise of personal jurisdiction over them. The software developer amended again adding the Texas citizens and another Delaware entity. It asserts we can exercise personal jurisdiction over the Texans based on theories of conspiracy to commit fraud, alter ego, or agency. We agree the Texas and Delaware citizens have numerous facially confusing business relationships managed from the same Texas office focused on servicing car dealerships. The entities seemingly work closely together. But the software developer does not offer sufficient evidence necessary to defeat a motion to dismiss for lack of personal jurisdiction demonstrating the Texas citizens are anything more than business relationships with Delaware entities even though they work out of the same Northern Texas office. The software developer must show proof and not just rest on allegations

when responding to evidence in support of a motion to dismiss for lack of personal jurisdiction. It fails to do so even when we consider evidence adduced the last time it tried to add the Texans. We grant the Texans' motion to dismiss for lack of personal jurisdiction in this District. But we transfer the software developer's claims against them in the interests of justice to the Northern District of Texas. The software developer pleads claims for breach of contract, malicious breach of contract, fraud, conspiracy, and alter ego against the two remaining Delaware entities subject to review of the adduced discovery. We deny the motion to dismiss for failure to state a claim or to strike the third amended Complaint but dismiss the three Texans for lack of personal jurisdiction as we do not enjoy personal jurisdiction over them. The Connecticut software developer can pursue the Texans in the transferee District in Northern Texas.

## I.     Background

Connecticut entity VoterLabs Inc. and Delaware entity Ethos Group Consulting, LLC agreed in December 2017 for VoterLabs to develop software for Ethos Consulting in exchange for engagement payments.[1] They also agreed to a termination payment provision should Ethos Consulting terminate without cause.[2] Ethos Consulting terminated in July 2018 allegedly without cause.[3] Ethos Consulting then refused to pay VoterLabs the last engagement payment due and the termination payment which VoterLabs argues is required under their agreement.[4]

VoterLabs sued Ethos Consulting seeking to recover under its contract over thirty months ago. It moved a couple months ago to add Texas citizens to its claims. It previously amended to add Texan David Terek, President and CEO of Ethos Consulting, as well as a Delaware entity and two Texas entities owned and/or controlled by Mr. Terek.[5] The newly added Texas citizens promptly moved to dismiss for lack of personal jurisdiction and for failure to state a claim.[6] We ordered limited jurisdictional discovery.[7] We dismissed the Texas citizens last month for lack of

personal jurisdiction and dismissed the civil conspiracy claim against Ethos Holdings and Ethos Consulting for failure to state a claim.[8] We granted VoterLabs another bite at the apple to cure the deficiencies in a third amended complaint.[9]

VoterLabs now tries again to add Mr. Terek, Ethos Group Inc., Ethos Group Resources, Inc., and Ethos Group Holdings, Inc.[10] It pleads claims for: fraud against Ethos Consulting and Mr. Terek; a separate alter ego claim incorporating its claims against Ethos Consulting to Mr. Terek, the Texas entities, and Ethos Holdings; and civil conspiracy against Mr. Terek and the Texas entities, Ethos Consulting, and Ethos Holdings.[11] VoterLabs avers we enjoy personal jurisdiction over Mr. Terek and the Texas entities under the alter ego, agency, or conspiracy theories.[12]

### *Mr. Terek provides services to car dealerships through a variety of "Ethos" companies.*

VoterLabs does not claim it agreed to produce software for the Delaware entity because the Delawarean had a relationship with Texas citizens. It does not claim an unsatisfied guaranty from anyone. It instead now asks for the extraordinary pre-judgment remedy of reaching beyond the Delaware contracting entity to hold Texas citizens (and one other Delaware entity) liable for the harm allegedly caused by the Delaware entity's breach of contractual obligations and now fraudulent representations. It bases its reach to the Texans on the facial inter-relationship of companies centered and largely controlled by David Terek in Northern Texas. But we cannot rely on allegations alone when evaluating whether we can exercise personal jurisdiction over the Texans; we need evidence of some form of alter ego, agency, or other theory to force the Texans to answer allegations relating to a Delawarean's breach of contract.

VoterLabs seeks to enforce a contract with Delawarean Ethos Consulting formed in 2008. Mr. Terek is the sole manager of Ethos Consulting.  He also owns Ethos Holdings. Ethos Holdings

owns three entities formed in 2008, only one of which is at issue today: Ethos Resources formed in Texas; non-party Ethos PD formed in Delaware; and non-party Ethos Services formed in Delaware.[13] As plead:



Delawarean Ethos Holdings is "the ultimate parent over several distinct lines of businesses in the automotive dealership industry," which include "consulting, recruiting, training, compliance solutions, technology, product administration, and dealer participation."[14] Non-party Ethos PD owns Texan Ethos Inc which provides products to help car dealerships "sell finance and insurance and related add-on products to the dealerships' customers" and "receive[s] the money from the dealership customers who purchase [finance and insurance] products."[15]

Texan Ethos Resources provides employees to Ethos Consulting under a January 1, 2009 service agreement and consent and joinder agreement.[16] Ethos Consulting in turn provides services to Ethos Inc. "in the form of advising dealership clients about Ethos Group products and/or dealership operations. Ethos Consulting enters in management consulting agreements directly with dealerships.[17] Ethos Consulting charges Ethos Inc. for its consulting services, and Ethos Resources charges Ethos Consulting for its services.[18] Ethos Consulting does not upcharge Ethos Inc. for its consulting services, and Ethos Resources charges Ethos Consulting its actual costs of the

4

workers.[19] The costs Ethos Consulting charges Ethos Inc. are the same costs Ethos Consulting incurs from obtaining its employees from Ethos Resources.[20] Ethos Inc. pays Ethos Resources directly, but the "transactions are recognized as part of Ethos Consulting's tax revenue."[21] All entities have their own bank accounts, and in the event an entity cannot meet its liabilities, it may borrow money via an intracompany loan from its parent or another subsidiary.[22] Relevant here, VoterLabs—despite contracting with Ethos Consulting—directed its invoices to Ethos Inc., which in turn paid the invoices.[23] Accountants later documented these payments as intracompany obligations between Ethos Inc. and Ethos Consulting upon finding the error.[24] The Ethos entities use "traditional consolidated accounting practices," and file "consolidated tax returns" but "revenue generation (if any) and costs are accounted for as to each separate entity."[25] The Ethos entities do not comingle funds.[26] The Ethos entities share office space in Texas and have the same contact information.[27] Mr. Terek owns Ethos Holdings.[28] He is also the sole director of Ethos Resources, Ethos Group Holdings, and Ethos Inc., and the sole manager of Ethos Consulting.[29]

## II.   Analysis

Mr. Terek and the named Ethos entities move to strike the third amended Complaint for failure to comply with our August 4, 2021 Order granting leave to amend to cure the earlier deficiencies.[30] Mr. Terek and the two Texas entities move to dismiss for lack of personal jurisdiction once again.[31] All move to dismiss the fraud claim against Ethos Consulting and Mr. Terek as barred by the statute of limitations or inadequately plead, and the civil conspiracy claim against all as not stating a claim, and a claim under the theory Delawarean Ethos Consulting is the alter ego for all the named Ethos entities and Mr. Terek for failure to state a claim.[32] VoterLabs counters it: (1) complied with our August 4, 2021 Order; (2) adequately pleads personal jurisdiction over the Texans; (3) adequately pleads the fraud claim with particularity and it is not

barred by the statute of limitations; and (4) adequately pleads its alter ego and civil conspiracy claims.[33]

VoterLabs complied with our August 4, 2021 Order. We do not enjoy personal jurisdiction over Mr. Terek or the Texas entities, and we transfer the claims against them to the Northern District of Texas. We deny the remaining Delawareans Ethos Consulting and Ethos Holdings's motion because VoterLabs adequately pleads the fraud and civil conspiracy claims against them. VoterLabs also adequately pleads Ethos Consulting is an alter ego of Ethos Holdings.

### A.    VoterLabs complied with our August 4, 2021 Order.

Our August 4, 2021 Order dismissed Mr. Terek and the Texas entities "without prejudice to a timely amendment" because "we lack[ed] a basis to exercise personal jurisdiction . . . on the plead theories."[34] We granted VoterLabs "leave to file one last amended Complaint to address the deficiencies in their second amended Complaint no later than August 13, 2021."[35] VoterLabs then filed its third amended Complaint.[36] VoterLabs did not exceed our Order by alleging two new theories of personal jurisdiction, filing a fraud claim, refiling its civil conspiracy claim based on fraud, and alter ego claims against Mr. Terek and the Texas entities.

VoterLabs now alleges we enjoy personal jurisdiction over Mr. Terek and the two Texas entities under the alter ego, agency, and conspiracy theories. These claims do not exceed the grant of leave under our August 4, 2021 Order.

We also dismissed the civil conspiracy claim against Ethos Holdings and Ethos Consulting without prejudice for failure to state a claim.[37] We dismissed the claim because VoterLabs's "civil conspiracy claim is Ethos Group Entities and Mr. Terek conspired to breach the Service Agreement" and "[a] conspiracy to breach a contract is not cognizable under Delaware law."[38] VoterLabs now brings the civil conspiracy claim alleging a conspiracy to defraud VoterLabs as

well as fraud claims against Mr. Terek and Ethos Consulting. These amended allegations do not exceed the leave granted in our Order. Asserting alter ego claims against Mr. Terek and the Texas entities incorporating the breach of contract, malicious breach, and fraud claims against Ethos Consulting does not exceed the leave granted in our Order to cure deficiencies in the second amended Complaint. The alleged facts directly relate to VoterLabs's newly offered jurisdictional theories.

We decline to strike VoterLabs's third amended Complaint as exceeding our leave to amend.

### B.      VoterLabs did not meet its evidentiary burden of personal jurisdiction over the Texans.

VoterLabs alleges we enjoy personal jurisdiction over Mr. Terek and the Texas entities under several theories: alter ego, agency, and conspiracy. Mr. Terek and the Texas entities again move to dismiss countering the theories do not allow us to enjoy personal jurisdiction over the defendants.

"'[T]he burden of demonstrating the facts that establish personal jurisdiction,' falls on the plaintiff . . . and 'once a defendant has raised a jurisdictional defense,' the plaintiff must 'prov[e] by affidavits or other competent evidence that jurisdiction is proper.'"[39] When, as here, no party requests an evidentiary hearing "'the plaintiff[s] need only establish a prima facie case of personal jurisdiction.'"[40] We are required to "'accept the plaintiff's allegations as true, and . . . to construe disputed facts in favor of the plaintiff.'"[41] "Of course, by accepting a plaintiff's facts as true when a motion to dismiss is originally made, a court is not precluded from revisiting the issue if it appears that the facts alleged to support jurisdiction are in dispute."[42]

We may exercise personal jurisdiction over a non-resident defendant to the extent provided by the law of the state in which the federal court sits.[43] Our exercise of personal jurisdiction must

comport with both the Delaware Long-Arm Statute and with the Due Process clause.[44] VoterLabs failed to meet its burden of establishing personal jurisdiction over Mr. Terek and the two Texas entities.[45]

### 1.      The Delaware Long Arm statute does not confer personal jurisdiction.

We found the plain language of the Delaware Long Arm Statute did not confer personal jurisdiction over Mr. Terek and the Texas entities last month.[46] We incorporate our previous findings today, and address in turn VoterLabs' new arguments we enjoy personal jurisdiction under the alter ego, agency, or conspiracy theories of jurisdiction. We do not.

### a.      VoterLabs does not adduce evidence supporting an alter ego theory allowing us to exercise personal jurisdiction over the Texans.

VoterLabs alleges we have personal jurisdiction over Mr. Terek and the Texas entities under a theory Ethos Consulting is the alter ego of Mr. Terek and the Texas entities. Allegations are helpful but they are only a start; they do not end our analysis. VoterLabs offers no new evidence allowing us to extend the Long-Arm Statute to these Texans based on evidence Ethos Consulting is an alter ego.

Disregarding the corporate entity is appropriate "only in exceptional circumstances."[47] Delaware law requires "fraud or injustice to be found in the defendants' use of the corporate form."[48] "Under the alter ego theory of personal jurisdiction, the contacts of an entity with a particular forum can be attributed to another person or entity if the entity having the forum contacts is the mere alter ego of such other person or entity. Thus, the alter ego theory of jurisdiction requires a finding similar to piercing the corporate veil."[49] We must consider: "whether [Ethos Consulting] is adequately capitalized for the corporate undertaking; whether [Ethos Consulting] is solvent; whether [Ethos Consulting paid] dividends, [kept] corporate records, [its] officers and

directors function[] properly, and [observed] other corporate formalities; whether [Mr. Terek] siphoned corporate funds; and whether, in general, [Ethos Consulting] simply functioned as a facade for [Mr. Terek and the Texas entities.]"[50]  No single factor is dispositive, and "generally there must be some combination of them, and there must be an overall element of injustice or unfairness present."[51]

VoterLabs alleges Delawarean Ethos Consulting is the alter ego of Mr. Terek and the Texas entities so Ethos Consulting's contacts with Delaware can be imputed to them for our exercise of personal jurisdiction. VoterLabs alleges: the "Ethos" entities all operated out of the same building in Texas; Ethos Consulting does not have a formal, written lease for its space in the building; Ethos Consulting only had $1,100 in its bank account during the relevant time and could not fulfill its obligations under the agreement with VoterLabs; Ethos Consulting does not have employees; Ethos Consulting is inadequately capitalized and has been since formation; the "Ethos" entities are operated without formal oversight of a board of directors; and Ethos Consulting keeps no formal records except its operating agreement as amended.[52]

VoterLabs's earlier adduced evidence—although not relied on now—shows Mr. Terek is the only director of Ethos Inc. and Ethos Resources and the only manager of Ethos Consulting, Ethos Consulting had one bank account with $1,100 during the relevant times, and Ethos Consulting shares the same address as Ethos Inc. and Ethos Resources.[53] The adduced evidence does not prove Ethos Consulting is inadequately capitalized and has been since formation or insolvent as the testimony demonstrates Ethos Consulting did—and could—obtain intracompany loans to fulfill its obligations.[54] VoterLabs offers no proof relating to dividends. Ethos Consulting produced corporate records.[55] VoterLabs does not adduce evidence Ethos Consulting failed to observe corporate formalities. VoterLabs does not adduce evidence of Mr. Terek and the Texas

entities siphoning funds; sworn testimony establishes no one siphoned funds nor are funds comingled between the Ethos entities.[56] The evidence does not establish Ethos Consulting is a mere façade of Texans Ethos Inc. and Ethos Resources.

There is no evidence of fraud in the use of the corporate form.[57] VoterLabs suggests Mr. Terek formed and used Ethos Consulting over twelve years ago to avoid payment obligations and liability in a decade-long scheme.[58] VoterLabs does not adduce evidence to demonstrate Ethos Consulting is a mere shell "shuttling assets between entities in an effort to escape the effect of any potentially adverse judgment" or Mr. Terek and the Texas entities "purposely manipulate[d]" Ethos Consulting to avoid judgment.[59] The evidence instead shows a complex and confusing corporate structure which does not, by its complexity, evidence alter ego control. Ethos Consulting contracts to lease employees from Ethos Resources under a written agreement. Ethos Consulting provides services to Ethos Inc. in the form of advising dealerships. Ethos Consulting charges Ethos Inc. its actual costs for providing services, and Ethos Resources charges Ethos Consulting its actual costs of the employees. This amount is the same and paid directly from Ethos Inc. to Ethos Resources. These transactions are recognized as part of Ethos Consulting's revenue. The evidence adduced to date also confirms Ethos Consulting can obtain an intracompany <u>loan</u> if it incurs a liability it cannot satisfy. But there is no evidence of fraud in the use of the corporate form. Piercing the corporate veil is an extraordinary remedy not available under the adduced evidence.

We lack personal jurisdiction over Mr. Terek and the Texas entities under the alter ego theory.

### b. The agency theory does not allow us to exercise personal jurisdiction.

VoterLabs alleges we have personal jurisdiction over Mr. Terek and the Texas entities under an agency theory. "Under agency theory, a defendant company may be subject to personal

jurisdiction under Delaware's long-arm statute by virtue of the court's personal jurisdiction over the defendant company's affiliate."[60] "The agency theory examines the degree of control which the parent exercises over the subsidiary."[61] "The agency theory may be applied not only to parents and subsidiaries, but also to companies that are 'two arms of the same business group,' operate in concert with each other, and enter into agreements with each other that are nearer than arm's length."[62] We consider: "[1] the extent of overlap of officers and directors, [2] methods of financing, [3] the division of responsibility for day-to-day management, and [4] the process by which each corporation obtains its business."[63] "No one factor is either necessary or determinative; rather, it is the combination of elements that is significant."[64] "[T]he mere existence of an agency relationship is not sufficient to confer jurisdiction. The court must still apply the Delaware long-arm statute."[65]

Ethos Holdings is a Delaware corporation. The issue is not whether Ethos Holdings can be hauled into Delaware due to the actions of Delawarean Ethos Consulting. Ethos Holdings and Ethos Consulting are already here. We must analyze whether Texans Mr. Terek, Ethos Inc., and Ethos Resources can be hauled into Delaware as "companies that are 'two arms of the same business group'" with Delawarean Ethos Consulting.

As a threshold matter, VoterLabs concludes "the third amended Complaint describes in detail how [Mr.] Terek, Ethos Inc., Ethos Resources, Ethos Holdings, and Ethos Consulting operated as one under [Mr.] Terek's control, with the same employees, same office . . . and the arrangements between them certainly nearer than arms-length."[66] VoterLabs does not cite—and we did not find—authority applying agency theory to an individual.[67] We reject an argument the agency theory allows us to exercise personal jurisdiction over Mr. Terek.[68]

The agency theory could apply to Ethos Inc. and Ethos Resources. "Where, like the situation here, the entities at issue are in a sister subsidiary relationship, and not a parent-subsidiary relationship, courts look at whether the two companies are 'corporate affiliates with close business ties' and operate in 'lockstep as part of a larger . . . business group.'"[69]   VoterLabs has not yet adduced a basis to find Delawarean Ethos Consulting and the Texas entities are affiliates with close business ties operating in lockstep. We readily find they are part of Mr. Terek's businesses but being in the same business is not the test.

Mr. Terek's control over the Ethos entities alone is insufficient.[70]   The adduced evidence demonstrates Ethos Consulting, Ethos Resources, and Ethos Inc. are subsidiaries and sub-subsidiaries of a common parent which entered arms-length business relationships with one another to achieve distinct business goals. Ethos Inc. sells products to car dealers, Ethos Consulting consults for Ethos Inc. by advising the dealerships Ethos Inc. sells products to and charges Ethos Inc. for its services, and Ethos Resources leases employees to Ethos Consulting under a contract. While operating in the same car dealership space, each serves different and distinct purposes under the Ethos Holdings umbrella. VoterLabs does not allege or adduce evidence to show these sister or niece entities act in lockstep—*i.e.*, every time Ethos Inc. gets a dealership client, Ethos Consulting is automatically brought in to advise the dealership customer on the products. The evidence instead demonstrates Ethos Consulting enters separate contracts with the dealerships, but there is no evidence dealerships automatically lockstep enter into these contracts because of a relationship with Ethos Inc. or Ethos Resources. While we construe the evidence in favor of VoterLabs, we cannot assume there may be evidence if VoterLabs has not adduced it in the thirty months since beginning this case. While Ethos Holdings uses consolidated accounting practices, VoterLabs fails to adduce evidence—or even allege—these practices allow the "subsidiaries [to]

12

operate as one."[71] Nor is there evidence anyone commingles the entities' funds. Revenue and costs are accounted as to each entity despite the consolidated accounting. VoterLabs failed to prove Delawarean Ethos Consulting is the mere agent of Texans Ethos Resources and Ethos Inc.

> **c.   VoterLabs does not adduce evidence allowing us to apply a conspiracy theory to exercise personal jurisdiction.**

If we find the alter ego and agency theory do not confer personal jurisdiction over Mr. Terek and the Texas entities, VoterLabs alleges the conspiracy theory does. Mr. Terek and the Texas entities argue this theory also fails because no substantial act or effect occurred in Delaware.

The Delaware Supreme Court recognizes a "conspiracy theory" of long-arm jurisdiction because the Delaware Long Arm Statute allows acts committed "through an agent" to trigger personal jurisdiction, "whereby all of the members of a conspiracy may be subjected to personal jurisdiction under [the long-arm statute] if one of the co-conspirators, acting in furtherance of the conspiracy, committed an act sufficient to invoke long-arm jurisdiction."[72] To invoke this jurisdiction, the plaintiff must establish: "(1) a conspiracy . . . existed; (2) the defendant was a member of that conspiracy; (3) a substantial act or substantial effect in furtherance of the conspiracy occurred in the forum state; (4) the defendant knew or had reason to know of the act in the forum state or that acts outside the forum state would have an effect in the forum state; and (5) the act in, or effect on, the forum state was a direct and foreseeable result of the conduct in furtherance of the conspiracy."[73]

VoterLabs alleges Mr. Terek, the Texas entities, Ethos Holdings, and Ethos Consulting conspired to defraud VoterLabs.[74] It alleges—with no evidence—Mr. Terek "had an unknown history and sophisticated strategy of contracting with start-ups and other . . . vulnerable counterparties, taking the benefit upfront but later refusing his part of bargain without probable cause, and then exploiting the transaction costs associated with litigation to render compensatory

damages inadequate and his more vulnerable opponents' to fold."[75] VoterLabs alleges the object of the conspiracy is to obtain services without paying and the following acts—not attributed to any entity or person—furthered the conspiracy: "tricking" VoterLabs into developing software at a low price by representing VoterLabs would receive a royalty or termination payment "with no intention of actually paying," using VoterLabs's ideas and work to have another vendor create the same software/product, representing an engagement payment is payable and then reversing course, representing the engagement payment would only be paid if VoterLabs released its intellectual property, requiring VoterLabs to file suit to enforce the contract in Delaware, attempting to drive up the litigation costs to make VoterLabs drop the case, contacting VoterLabs's owners' family members and employers, and maintaining a "sham entity" to avoid liability.[76] VoterLabs then alleges as to each Texan:

- Mr. Terek made the misrepresentations and used his entities to further the scheme, "including using Ethos Consulting as a sham;"[77]

- Ethos Inc. made the initial engagement payments to VoterLabs, withheld the outstanding engagement payment owed to VoterLabs, and funded the Delaware litigation;[78]

- Ethos Resources drafted and negotiated the written agreement between VoterLabs and Ethos Consulting, followed Mr. Terek's direction to withhold an engagement payment owed to VoterLabs, "facilitat[ed]" Ethos Consulting's filing of claims against VoterLabs in Delaware, and managed the Delaware litigation to increase costs to VoterLabs.[79]

Even assuming VoterLabs established elements 1 and 2 for a conspiracy theory, VoterLabs still did not adduce evidence of a substantial act or substantial effect in furtherance of the conspiracy occurred in Delaware. VoterLabs's fraud claims arise from misrepresentations made before or during negotiations between Ethos Consulting and VoterLabs—which occurred in Texas

and Connecticut. The alleged misrepresentations involved an initial public offering, a royalty payment owed to VoterLabs after completion of the software, termination payments owed to VoterLabs under the written agreement, and assurance about Ethos Consulting's ability to meet its contracted obligations to VoterLabs.[80] As we found a month ago, "VoterLabs is a Connecticut corporation headquartered in Connecticut. [Mr. Terek and the Texas entities] are headquartered in [or] reside in Texas.  There is no evidence or allegation of a single act related to VoterLabs' claims occurring in, aimed toward, or having an effect in Delaware."[81] The purported misrepresentations forming the basis of the fraud claims did not occur in Delaware. The negotiations between Ethos Consulting and VoterLabs occurred in Texas and Connecticut. Even if we accept Mr. Terek, the Texas entities, Ethos Consulting, and Ethos Holdings conspired to defraud VoterLabs, the conduct occurred in Texas and VoterLabs felt the effects in Connecticut. VoterLabs has not shown a civil conspiracy affecting Delaware to establish civil conspiracy personal jurisdiction here.[82]

### 2. We also lack a Constitutional basis to exercise personal jurisdiction.

We found we lacked a constitutional basis to exercise personal jurisdiction over Mr. Terek and the Texas entities on August 4, 2021. Nothing presently before us changes our earlier reasoning. We incorporate our previous analysis and again find no basis to exercise personal jurisdiction over Mr. Terek and the Texas entities consistent with due process.

### C. We transfer the claims against the Texans to the District Court for the Northern District of Texas.

VoterLabs requests we transfer the claims against Mr. Terek and the Texas entities to the District Court for the Northern District of Texas if we find no personal jurisdiction here. We grant VoterLabs's request.

Our Court of Appeals instructs we follow Congress' mandate in 28 U.S.C. § 1631 if we find "a want of jurisdiction."[83] Congress in section 1631 provides: "Whenever a civil action is filed

in a court . . . that court finds that there is a want of jurisdiction, the court shall, if it is in the interest

of justice, transfer such action or appeal to any other such court (or, for cases within the jurisdiction

of the United States Tax Court, to that court) in which the action or appeal could have been brought

at the time it was filed or noticed."[84] Congress in section 1631 permits transfer of only part of the

action.[85] There are two prongs to consider for transfer: (1) whether the defendants are subject to

personal jurisdiction in Texas; and (2) whether transfer is in the interests of justice.[86]

No one disputes Texas enjoys personal jurisdiction over Texans Mr. Terek, Ethos

Resources, and Ethos Inc.[87] It is in the interest of justice to transfer the claims against Mr. Terek

and the Texas entities to the Northern District of Texas rather than require VoterLabs to file a new

case there.[88]

### D.    We deny the Delawareans' motion to dismiss claims against them.

We next address the Delaware entities' motion to dismiss the third amended Complaint for

failing to state a fraud, alter ego, and conspiracy claim against them.[89] Ethos Consulting moves to

dismiss the fraud claim as time-barred or alternatively because VoterLabs fails to state the claim

with particularity. Ethos Holdings moves to dismiss the alter ego claims for failure to state a claim.

Both Delawareans move to dismiss the conspiracy claim for failure to state a claim. We deny each

request.

### 1.    VoterLabs pleads its timely fraud claim against Ethos Consulting.

Ethos Consulting argues the statute of limitations bars VoterLabs's fraud claim and

VoterLabs fails to adequately plead it with particularity. VoterLabs concedes its claim is facially

time-barred but argues a tolling doctrine applies or the complaint relates back to make it timely.

We agree with VoterLabs.

VoterLabs must plead: "1) a false representation, usually one of fact ...; 2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; 3) an intent to induce the plaintiff to act or to refrain from acting; 4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and 5) damage to the plaintiff as a result of such reliance."[90] "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."[91] VoterLabs must plead the "date, time, and place of the alleged fraud or otherwise inject precision or some measurement of substantiation into the fraud allegation."[92]

### a.    We deny the limitations argument under the discovery rule.

Ethos Consulting argues we should dismiss the fraud claim against it as time-barred because it is clear the claim is not brought within the statute of limitations. VoterLabs responds by acknowledging the claim is facially time-barred but argues the claim is tolled. Our Court of Appeals instructs "the Federal Rules of Civil Procedure require a defendant to plead an affirmative defense, like a statute of limitations defense, in the answer, not in a motion to dismiss," but acknowledge "we permit a limitations defense to be raised by a motion under Rule 12(b)(6) 'only if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'"[93] Because the parties agree the claim accrued on December 18, 2017, the claim is facially time-barred because VoterLabs did not bring it within three years of the date of accrual.[94]

VoterLabs argues a tolling doctrine (the discovery rule or fraudulent concealment) applies or it relates back to the second amended Complaint. Ethos Consulting argues the tolling doctrine

does not apply because Ethos Consulting knew VoterLabs would not pay the fifth engagement payment or termination payment by June 26, 2018.

VoterLabs adequately pleads the discovery rule applies to toll the statute of limitations at this pleadings stage. "Ignorance of the cause of action will not toll the statute ... unless the injury is inherently unknowable and the claimant is blamelessly ignorant of the wrongful act and the injury complained of. Even if a tolling doctrine applies, however, the limitations period is only tolled until 'the plaintiff was objectively aware of the facts giving rise to the wrong i.e. on inquiry notice.' A plaintiff is on inquiry notice when the plaintiff 'discovers the facts constituting a basis for the cause of action, or knows facts sufficient to put a person of ordinary intelligence ... on inquiry, which if pursued would lead to the discovery of such facts.'"[95]

We reject Ethos Consulting's argument VoterLabs knew of fraud because it knew Ethos Consulting did not intend to pay in June 2018. VoterLabs knew or had reason to know Ethos Consulting allegedly breached the contract in June 2018. But this alleged breach did not put VoterLabs on notice Ethos Consulting engaged in fraud by making false statements relating to the engagement payments, termination payments, and Ethos Consulting's ability to meet its obligations under the agreement. VoterLabs alleges it did not learn the statements were false, Ethos Consulting never intended to pay them, or the alleged scheme of which Ethos Consulting is a part until the litigation. We find VoterLabs adequately pleads the discovery rule on the face of the complaint.

**b.    VoterLabs pleads its fraud claim against Ethos Consulting.**

Ethos Consulting argues we must dismiss VoterLabs's fraud claim because (1) of bootstrapping; (2) failure to plead separate damages; (3) Ethos Consulting paid the engagement payments contrary to the fraud claim alleging it never intended to pay; (4) the facts surrounding

the intent to not pay the Base Royalty are not sufficiently plead; and (5) the fraud claim cannot rest on mere different interpretations of the agreement so the termination payment cannot be the basis of fraud.

The bootstrapping doctrine does not bar the fraud claim. "Contractual representations may form the basis for a fraud claim where a plaintiff has alleged facts 'sufficient to support a reasonable inference that the representations were knowingly false' . . . Thus, the anti-bootstrapping rule does not apply where a plaintiff has made particularized allegations that a seller knew contractual representations were false or lied regarding the contractual representation, or where damages for plaintiff's fraud claim may be different from plaintiff's breach of contract claim."[96] VoterLabs does both.[97] The bootstrapping doctrine does not apply, and VoterLabs pleads separate damages.

VoterLabs pleads fraud by Ethos Consulting with sufficient particularity.[98] VoterLabs pleads with specificity the date and context of the fraudulent misrepresentations, Ethos Consulting falsely made the statements to induce VoterLabs to enter the contract, VoterLabs entered it, and suffered damage as a result.[99] Ethos Consulting argues we must dismiss the fraud claim based on the engagement payments because "VoterLabs's fraud allegation that Ethos Consulting and Terek never intended to pay VoterLabs and were unable to do so is not only implausible but is refuted by VoterLabs' concession that it received these payments."[100]

We must take VoterLabs's allegations as true at this stage. VoterLabs alleges Ethos Consulting could not and did not pay the engagement payments. It alleges Ethos Inc. made them.[101]

We also reject Ethos Consulting's argument regarding the termination payment. Accepting the facts as true and drawing inferences in favor of VoterLabs, VoterLabs alleges testimony of an Ethos Group attorney who purportedly said at the time Ethos Consulting agreed to the termination

terms it rationalized in its head it did not have to pay it and therefore never intended to pay it or the royalty payments.[102]

VoterLabs pleads its timely fraud claim against Ethos Consulting.

**2.    VoterLabs states an alter ego claim.**

Ethos Holdings moves to dismiss the alter ego claims as merely reciting the elements. VoterLabs counters it pleads facts to support its claim Ethos Consulting is the alter ego of Ethos Holdings.[103] We agree with VoterLabs.

VoterLabs must plead Ethos Holdings and Ethos Consulting did not operate as legally distinct entities, and "an element of fraud, injustice or inequity in the use of the corporate form."[104] "Delaware courts consider a number of factors, including: (1) whether the corporation is adequately capitalized; (2) whether the corporation is solvent; (3) whether corporate formalities were observed (i.e., whether dividends were paid, corporate records kept, or officers and directors functioned properly); (4) whether the controlling shareholder siphoned company funds; or (5) in general, whether the corporation simply acted as a façade for the controlling shareholder."[105]

We find—at the motion to dismiss stage where we take all plead facts as true and construe all inferences in favor of the plaintiff—VoterLabs adequately plead Ethos Consulting is an alter ego of Ethos Holdings. VoterLabs alleges the Ethos entities are under common control and did not follow corporate formalities, such as board of director oversight, because Mr. Terek acted as sole director and member of the entities at issue here.[106] VoterLabs alleges Ethos Consulting only had $1,100 in its bank account at all relevant times and could not itself meet its obligations under the contract at issue here.[107] VoterLabs also alleges Ethos Consulting keeps minimal corporate records.[108] VoterLabs alleges all the Ethos entities operate out of the same building, use the same workers, have the same contact information, use the same logo, and are "all part of a single

business that trains and provides products to dealerships to help sell more vehicles . . . so 'Terek Dave d/d/a Ethos Group' can profit."[109] VoterLabs alleges employees did not know the difference between the Ethos entities.[110] VoterLabs alleges Mr. Terek and the Ethos entities used Ethos Consulting to avoid payment obligations.[111]

VoterLabs adequately pleads an alter ego claim against Delawarean Ethos Holdings. Summary judgment and trial require different proofs. But VoterLabs need only sufficiently plead alter ego at this stage to overcome a motion to dismiss for failure to state a claim.

### 3.    VoterLabs states a civil conspiracy claim.

VoterLabs alleges the Ethos entities and Mr. Terek conspired to defraud VoterLabs.[112] The Delawareans are the only Ethos entities left—Ethos Consulting and Ethos Holdings—so we determine whether VoterLabs states a claim against them for civil conspiracy. It does.

To state a claim for civil conspiracy under Delaware law, VoterLabs must plead: "(1) a confederation or combination of two or more persons; (2) [a]n unlawful act done in furtherance of the conspiracy and (3) [a]ctual damage."[113] "Although the elements of a claim for civil conspiracy are flexible, it is essential that there be an underlying wrongful act, such as a tort or a statutory violation" because it is not an independent cause of action.[114] Having found the fraud claim survives, we also find VoterLabs adequately pleads a claim for civil conspiracy to defraud VoterLabs.

VoterLabs alleges these Ethos entities made fraudulent misrepresentations while negotiating the written agreement which they knew to be false and had no intent of fulfilling the terms included in the written agreement.[115] VoterLabs alleges it suffered actual damages because it performed work at the lower price based on the representations and has not received the payments.[116] VoterLabs states a claim for civil conspiracy.

## III.    Conclusion

VoterLabs sued Ethos Consulting over thirty months seeking payment on its software development contract. It now sufficiently pleads breach of contract, malicious breach of contract, fraud, and civil conspiracy claims against Ethos Consulting.  It also adequately pleads Ethos Consulting is an alter ego of fellow Delawarean Ethos Holdings subject to our review after discovery.   But it still has not adduced the required evidence allowing us to pierce corporate veils and find Mr. Terek, Ethos Resources, and Ethos Inc. are alter egos or otherwise subject to the exercise of personal jurisdiction here under the Delaware Long-Arm Statute and consistent with due process.  We grant VoterLabs's alternative request to transfer its claims against these three Texas citizens to the United States District Court for the Northern District of Texas.

---

[1] D.I. 206 ¶¶ 38, 43.

[2] *Id.* ¶ 56.

[3] *Id.* ¶¶ 99–101.

[4] *Id.* ¶¶ 156–57.

[5] D.I. 137, 145, 147. VoterLabs added Ethos Group, Inc. (Texas defendant), Ethos Group Resources, Inc. (Texas defendant), Ethos Group Holdings, Inc. (Delaware corporation with principal place of business in Texas), and Mr. Terek (Texas defendant).

[6] D.I. 163. Ethos Holdings Inc. and Ethos Consulting joined the motion to dismiss for failure to state a claim.

[7] D.I. 171. We today consider the evidence adduced during the jurisdictional discovery submitted in the last round of amendments. Following the parties' motions to quash (D.I. 175) and compel (D.I. 176) and oral argument, we limited the jurisdictional discovery and did not permit discovery on "unrelated relationships or financials, bank accounts, ownership or management of these Texas citizens given no alter ego theories" were plead by VoterLabs. D.I. 18, n.1.

[8] D.I. 201, 202.

[9] *Id.*

[10] D.I. 206.

[11] *Id.*

[12] *Id.*

[13] *Id.* at 31 (diagram); D.I. 213, Decl. of Jeffrey Lukash, Exhibit B, ¶ 5a–c.

[14] D.I. 213, Exhibit B ¶ 4.

[15] D.I. 206 ¶ 180.

[16] *Id.* ¶ 175; D.I. 213 at Ex. B ¶ 9; D.I. 190 at 350.

[17] D.I. 213, Ex. B ¶ 10.

[18] D.I. 206 ¶ 223.

[19] *Id.*; D.I. 213, Exhibit B ¶ 11.

[20] D.I. 206 ¶ 223; D.I. 213, Exhibit B ¶ 11.

[21] D.I. 213, Ex. B ¶ 11; *see also* D.I. 191 at 346–52.

[22] D.I. 213, Ex. B ¶¶ 8, 14.

[23] *Id.* ¶ 12; D.I. 191 at 327–28.

[24] D.I. 213, Ex. B ¶ 12; D.I. 191 at 327–28.

[25] D.I. 213, Ex. B ¶¶ 6–7.

[26] *Id.* ¶ 16.

[27] D.I. 206 ¶¶ 176, 236.

[28] *Id.* ¶ 169.

[29] *Id.* ¶ 173; D.I. 191 at 141–42.

[30] D.I. 211.

[31] *Id.*

[32] *Id.*

---

[33] D.I. 214.

[34] D.I. 202 ¶ 1.

[35] *Id.* ¶ 3.

[36] D.I. 206.

[37] D.I. 202 ¶ 2.

[38] D.I. 201 at 23.

[39] *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002) and *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir.1996)); *see also E.I. du Pont de Nemours & Co. v. Agfa-Gavaert NV*, 335 F. Supp. 3d 657, 665–66 (D. Del. 2018) ("When reviewing a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the court must accept the plaintiff's allegations as true and resolve disputed facts in favor of the plaintiff . . . However, "[o]nce a jurisdictional defense has been raised, the plaintiff bears the burden of establishing with reasonable particularity that sufficient minimum contacts have occurred between the defendant and the forum state to support jurisdiction." . . . They may do so through sworn affidavits or other competent evidence . . . A plaintiff "is required to respond to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction with actual proof, not mere allegations." (internal quotations and citations omitted)); *DNA Genotek Inc. v. Spectrum DNA*, 224 F. Supp. 3d 359, 362 (D. Del. 2016) ("Plaintiff bears the burden of establishing that sufficient minimum contacts have occurred between the defendant and the forum to support jurisdiction . . . To meet this burden, the plaintiff cannot 'rely on the bare pleadings alone,' . . . but must produce 'sworn affidavits or other competent evidence' (internal citations and quotations omitted)); *ANI Pharms., Inc. v. Method Pharms., LLC*, 2019 WL 176339, at *3 (D. Del. Jan. 11, 2019) ("When a defendant challenges a court's exercise of personal jurisdiction under Rule 12(b)(2), 'the plaintiff bears the burden of establishing personal jurisdiction by a preponderance of the evidence and must do so by 'establishing with reasonable particularity sufficient contacts between the defendant and the forum state. To meet this burden, the plaintiff must produce 'sworn affidavits or other competent evidence,' since a Rule 12(b)(2) motion 'requires resolution of factual issues outside of the pleadings.'" (internal citations and quotations omitted)).

[40] *Metcalfe*, 566 F.3d at 330 (quoting *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007)).

[41] *Id.* (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003)).

[42] *Id.* at 331 (quoting *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992)).

[43] Fed. R. Civ. P. 4(k)(1)(A).

---

[44] *Intellectual Ventures I LLC v. Ricoh Co. Ltd.*, 67 F. Supp. 3d 656, 658–59 (D. Del. 2014) ("To establish personal jurisdiction, a plaintiff must produce facts sufficient to satisfy two requirements by a preponderance of the evidence, one statutory and one constitutional.")

[45] VoterLabs failed to submit evidence or actual proof of its jurisdictional allegations in response to Mr. Terek and the Texas entities' motion to dismiss for lack of personal jurisdiction. Once a motion to dismiss for personal jurisdiction is filed, a plaintiff *cannot* rely "on bare pleadings alone" and *must* respond "with actual proofs, not mere allegations." *Metcalfe*, 566 F.3d at 330–31; *E.I. du Pont de Nemours & Co*., 335 F. Supp. 3d at 665–66; *DNA Genotek Inc*., 224 F. Supp. 3d at 362; *ANI Pharms., Inc*, 2019 WL 176339 at *3; *Fid. Nat'l Info. Servs., Inc. v. Plano Encryption Techs., LLC*, 2016 WL 1650763, at *5 (D. Del. Apr. 25, 2016), *report and recommendation adopted*, 2016 WL 11695472 (D. Del. June 23, 2016) ("As an initial matter, it is worth noting that once a motion to dismiss for lack of personal jurisdiction is made, a plaintiff cannot rely on the bare pleadings alone in order to withstand the motion; it must respond with actual proofs, not mere allegations. (internal quotations omitted)). VoterLabs instead points only to its allegations made in its third amended Complaint.

The parties engaged in limited jurisdictional discovery a couple months ago. VoterLabs submitted evidence adduced during jurisdictional discovery. *See* D.I. 191–92. While VoterLabs does not cite this evidence in support of the motion before us now, we still scoured the record for support of its allegations. We find nothing new.

[46] D.I. 201.

[47] *Marnavi S.p.A. v. Keehan*, 900 F. Supp. 2d 377, 392 (D. Del. 2012).

[48] *Id.*

[49] *Id.*; *see also E.I. du Pont de Nemours & Co. v. Agfa-Gavaert NV*, 335 F. Supp. 3d 657, 674 (D. Del. 2018) ("To state a veil-piercing claim under Delaware law, a plaintiff must plead facts supporting an inference that the corporation, through its alter ego, has created a sham entity designed to defraud investors or creditors.").

[50] *Id.* (citing *Maloney–Refaie v. Bridge at School, Inc.*, 958 A.2d 871, 881 (Del. Ch. 2008)).

[51] *E.I. du Pont de Nemours & Co.*, 335 F. Supp. 3d at 674 (further citations omitted).

[52] D.I. 206 ¶¶ 173–74, 176, 215–222, 231–236; D.I. 191 at 141–42, 208–19, 262–67, 338–341.

[53] D.I. 191 at 141–42; 338–341.

[54] *Id.* at 208–19; D.I. 213, Ex. B ¶¶ 13–15.

[55] D.I. 191 at 262–66.

[56] D.I. 213, Ex. B ¶¶ 16–17.

[57] *See Mobil Oil Corp. v. Linear Films, Inc.,* 718 F. Supp. 260, 269 (D. Del. 1989) ("The law requires that fraud or injustice be found in the defendants' use of the corporate form.").

[58] D.I. 206 ¶¶ 128, 158.

[59] *See Mobil Oil Corp.*, 718 F. Supp. at 270.

[60] *Enzo Life Scis., Inc. v. Hologic Inc.,* 2018 WL 4660355, at *4 (D. Del. Sept. 26, 2018).

[61] *Nespresso USA, Inc v. Ethical Coffee Co. SA*, 263 F.Supp.3d 498, 505 (D. Del. 2017) (internal quotations omitted).

[62] *Enzo Life Scis., Inc.*, 2018 WL 4660355, at *4 (quoting *Robert Bosch LLC v. Alberee Prod., Inc.*, 70 F. Supp. 3d 665, 675 (D. Del. 2014)).

[63] *Id.* (internal citations omitted); *see also 3G Licensing, S.A.*, 2019 WL 3974539, at *7; *Perlight Solar Co. v. Perlight Sales N. Am. LLC*, 2015 WL 5544966, at *3 (D. Del. Sept. 18, 2015).

[64] *Perlight Solar Co.*, 2015 WL 5544966, at *3.

[65] *Telcordia Techs., Inc. v. Alcatel S.A.*, 2005 WL 1268061, at *2 (D. Del. May 27, 2005).

[66] D.I. 214 at 7.

[67] See, e.g. E.I. du Pont de Nemours, 335 F. Supp. 3d at 667; In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Pat. Litig., 693 F. Supp. 2d 409, 420 (D. Del. 2010); Cephalon, Inc. v. Watson Pharms., Inc., 629 F. Supp. 2d 338, 348 (D. Del. 2009); IOENGINE, LLC v. PayPal Holdings, Inc., 2019 WL 330515, at *10 (D. Del. Jan. 25, 2019); 3G Licensing, S.A. v. Lenovo Grp. Ltd., 2019 WL 3974539, at *7 (D. Del. Aug. 22, 2019), report and recommendation adopted, 2019 WL 7635823 (D. Del. Sept. 19, 2019); Enzo Life Scis., Inc., 2018 WL 4660355; Nespresso USA, Inc., 263 F.Supp.3d 498; DNA Genotek Inc. v. Spectrum DNA, 224 F. Supp. 3d 359, 366 (D. Del. 2016); Perlight Solar Co., 2015 WL 5544966, at *3.

[68] We also note in support of its conclusory statement, VoterLabs cites to allegations in its third amended Complaint, which support its alter ego or mere instrumentality theory of jurisdiction, purportedly conflating the two. D.I. 214 at 7 (citing D.I. 206 ¶¶ 231–38)).

[69] E.I. du Pont de Nemours & Co., 335 F. Supp. 3d at 670 (quoting Wesley-Jessen Corp. v. Pilkington Visioncare, Inc., 863 F.Supp. 186, 189 (D. Del. 1993)).

[70] *See, e.g.*, *Nespresso USA, Inc.,* 263 F. Supp. 3d at 505 (rejecting agency jurisdiction when "Nestlé and Nestec dictate the policies and strategies of Nespresso USA, take credit for all Nespresso USA activities regarding sales, employment, and property, place the Nestlé logo on Nespresso products, control the Nespresso websites, and share their corporate officers with Nespresso").

[71] *E.I. du Pont de Nemours & Co.*, 335 F. Supp. 3d at 672 (finding no evidence "demonstrating . . . the business strategies and financial statements of [the subsidiaries] were consolidated so that the subsidiaries could operate as one.").

[72] *Chandler v. Ciccoricco*, No. 19842-NC, 2003 WL 21040185 (Del. Ch. May 5, 2003) (citing *Instituto Bancario Italiano SpA v. Hunter Eng'g Co.*, 449 A.2d 210, 225 (Del. 1982)).

[73] Instituto Bancario Italiano SpA, 449 A.2d at 225.

[74] D.I. 206 ¶ 240.

[75] *Id.* ¶ 242.

[76] *Id.* ¶ 243.

[77] *Id.* ¶ 244.

[78] *Id.* ¶ 245.

[79] *Id.* ¶ 247.

[80] *Id.* ¶¶ 179–227.

[81] D.I. 201 at 13–14.

[82] *See, e.g.*, *Deutsche Bank AG v. Devon Park Bioventures, LP*, 2021 WL 2711472, at *8–9 (Del. Ch. June 30, 2021) (finding most of the specific facts alleged to be in furtherance of the conspiracy occurred outside Delaware—despite Delaware being the state of formation—and no conspiracy jurisdiction).

We recognize VoterLabs attempts to plead facts occurring in Delaware, including "funding" and "managing" the litigation in Delaware with VoterLabs.  But these claims possibly only relate to an abuse of process or other litigation abuse theory; this case is about conduct before the litigation. VoterLabs does not plead a claim for conspiracy to commit abuse of process. It pleads a conspiracy between the Mr. Terek, the Texas entities, Ethos Holdings, and Ethos Consulting to defraud VoterLabs by representing VoterLabs would receive certain payments and Ethos Consulting could fulfill its obligations under the written agreement when it had no intent to do so and Ethos Consultants could not. VoterLabs fails to prove a substantial act in furtherance of the conspiracy occurring in or having effect in Delaware.

We reject VoterLabs's reliance on *AeroGlobal Cap. Mgmt., LLC v. Cirrus Indus., Inc.,* 871 A.2d 428, 439 (Del. 2005) to argue Mr. Terek committed a "substantial act" in Delaware because he "made a choice to continue the operation of Ethos Consulting since 2008 and for it to be available and used as it has been in this matter." D.I. 214 at 8–9 (citing D.I. 206 ¶ 254). VoterLabs's allegations Mr. Terek maintained Ethos Consulting to defraud companies is not supported, and Voterlabs's mere allegations—even accepted as true—do not meet its burden of proof. The

Delaware Supreme Court's analysis in *AeroGlobal Cap. Mgmt., LLC*, is distinguishable. The Delaware Supreme Court—not in the context of civil conspiracy jurisdiction—found "the ownership of a Delaware subsidiary does not, without more, amount to the transaction of business under Delaware's Long Arm Statute. However, as is the case here, the ownership of a Delaware subsidiary may constitute the transaction of business under Delaware's Long Arm Statute where the underlying cause of action arises from the creation and operation of the Delaware subsidiary. This is the case where the foreign corporation created and operated the Delaware subsidiary in a manner that would avail itself of the benefits and protections of the laws of the State of Delaware."). The foreign corporation created the Delaware subsidiary "for the express purpose of facilitating private equity investments in the United States, including Delaware." *AeroGlobal Cap. Mgmt., LLC*, 871 A.2d at 440. The court found "the acquisition [at issue] was the type of transaction contemplated by [the parent company] when it created and operated [the subsidiary] under the benefits and protections of Delaware law" and "the totality of the circumstances . . . show[ed] that the [parent company] transacted business in [Delaware] within the meaning of Delaware's Long Arm Statute." *Id.* This is simply not true here. VoterLabs fails to adduce evidence Mr. Terek created and maintained Ethos Consulting to defraud companies. Nor has VoterLabs offered evidence this purported fraud is the type of "transaction" contemplated by Mr. Terek at the time he created it. The totality of the circumstances here simply do not support our exercising personal jurisdiction Mr. Terek and the Texas entities when no substantial act or effect of the alleged conspiracy occurred in Delaware.

[83] *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 224 (3d Cir. 2016).

[84] 28 U.S.C. § 1631.

[85] *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 110 (3d Cir. 2009) ("[W]e have interpreted section 1631 to permit the transfer of all or only part of an action.").

[86] *Chavez*, 836 F.3d at 224; *see also Int'l Constr. Prod. LLC v. Caterpillar Inc.*, 2020 WL 4589775, at *4 (D. Del. Aug. 10, 2020) (analyzing two prongs for transfer of venue).

[87] Texas has personal jurisdiction over Mr. Terek and the Texas entities under its long arm statute and under the due process clause. *Sayers Constr., L.L.C. v. Timberline Constr., Inc.*, 976 F.3d 570, 573 (5th Cir. 2020) ("[I]n general, federal courts can exert power only over out-of-State defendants that are 'subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located.' Here, Texas gives its courts of general jurisdiction all of the power allowed by the Due Process Clause. 'Thus, in order to determine whether the Federal District Court in this case was authorized to exercise jurisdiction over [the subcontractors], we ask whether the exercise of jurisdiction comports with the limits imposed by federal due process on the State of' Texas." (internal citations omitted)).

D.I. 163-4 ¶ 6 ("Ethos Group Inc. and Ethos Group Resources (the 'Texas Defendants') are Texas corporations with their headquarters in Irving, Texas."); D.I. 163-4 ¶ 9 (declaration of David Terek identifying his permanent residence is Texas); D.I. 211 at 3 ("The Texas Defendants also incorporate the Court's findings contained in D.I. 201. Specifically, as the Court already has found:

(1) each of the Texas Defendants is 'at home' in Texas."); D.I. 201 at 16–17 (analyzing general jurisdiction and finding the Texas defendants 'at home' in Texas).

[88] In transferring, we do not opine on the substance of the claims by a Connecticut entity against an individual and entities at home in Texas. We leave the issues about the governing law and whether they state a claim to our Texas colleagues mindful we are scheduled to resolve the substantive issues before a jury beginning on December 14, 2021. D.I. 170.

[89] Federal Rule of Civil Procedure 12(b)(6) requires a complaint to state a claim upon which relief can be granted. Fed. R. Civ. P. (12)(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim has facial plausibility when the plaintiff pleads factual content … allow[ing] the court to draw the reasonable inference … the defendant is liable for the misconduct alleged." *Robert W. Mauthe M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility … a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C.,* 806 F. App'x at 152 (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878-79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that … 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations, …, and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'…, we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Laboratories LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

[90] *Hauspie v. Stonington Partners, Inc.*, 945 A.2d 584, 586 (Del. 2008) (quoting *Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 472 (Del.1992)).

[91] Fed. R. Civ. P. 9(b).

[92] *Ocimum Biosolutions (India) Ltd. v. LG Corp*, 2021 WL 931094, at *6 (D. Del. Mar. 11, 2021) (citing *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)).

[93] *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

[94] 10 Del. C. § 8106.

[95] *Nalda v. Green Valley Home Inspections, LLC*, 2021 WL 3783640, at *4 (Del. Super. Ct. Aug. 24, 2021) (further citations omitted).

[96] *Swipe Acquisition Corp. v. Krauss*, 2020 WL 5015863, at *11 (Del. Ch. Aug. 25, 2020) (internal citations omitted).

[97] D.I. 206 ¶¶ 190, 194, 207, 209, 212, 214–22, 227, Wherefore clause (requesting attorney's fees and other consequential damages after adding fraud claims).

[98] *Id.* ¶¶ 179–212, 214–27.

[99] *Id.*

[100] D.I. 211 at 14.

[101] D.I. 206 ¶¶ 214–19, 221, 238.  VoterLabs undercuts its own allegations in its response brief asserting, "[t]he gravamen of the claim is Ethos Consulting would make the engagement payments (that were based on a good faith estimate of the cost) but never intended to pay the royalty or termination payment." D.I. 214 at 15.

[102] D.I. 206 ¶¶ 207–09.

[103] Separate from VoterLabs's alter ego personal jurisdiction theory to haul the Texans into court in Delaware, VoterLabs also asserts an alter ego claim against Ethos Holdings incorporating the counts against Ethos Consulting for breach of contract, malicious breach of contract, and fraud. Unlike in our analysis for the alter ego theory of personal jurisdiction, VoterLabs need not adduce sufficient evidence of alter ego against Ethos Holdings at this stage. VoterLabs must only plead "enough facts to state a claim [for] relief that is plausible on its face," and we accept those facts as true. *Sanders*, 790 F. App'x at 426; *Oakwood Laboratories LLC*, 999 F.3d at 904.

[104] *Juju, Inc. v. Native Media, LLC*, 2020 WL 3208800, at *9 (D. Del. June 15, 2020), *report and recommendation adopted*, 2020 WL 4001059 (D. Del. July 15, 2020).

[105] *Id.*

[106] D.I. 206 ¶¶ 173–74, 232.

[107] *Id.* ¶¶ 214–19.

[108] *Id.* ¶ 235.

[109] *Id.* ¶ 236.

[110] *Id.* ¶ 233.

[111] *Id.* ¶¶ 128, 158.

[112] *Id.* ¶¶ 240–41.

[113] *Tani v. FPL/Next Era Energy*, 811 F. Supp. 2d 1004, 1025 (D. Del. 2011).

[114] *Id.*; *see also Johnson v. Preferred Pro. Ins. Co.,* 91 A.3d 994, 1015 (Del. Super. Ct. 2014) (fraud provides independent tort to sustain civil conspiracy claim).

[115] D.I. ¶¶ 179-90; 191–212, 214–222, 227, 241, 242–53.

[116] *Id.* ¶¶ 156–57.